V H/BF Fee Pd 219224

ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAY 19 2005
CLERK, U.S. DISTRICT COURT
By ______ Deputy

| | | |
|---|---|---|
| **Texas Barcode Systems, Ltd.** | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | Cause No. 3-05CV-1030H |
| | § | |
| **Zebra Technologies International, LLC & Ken Griffin** | § | |
| | § | |
| | § | |
| ***Defendants*** | § | |

## NOTICE OF REMOVAL

**TO: THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS:**

Pursuant to 28 U.S.C. §§ 1334, 1367, 1441, 1446, 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure, Defendants Zebra Technologies International, LLC ("Zebra") and Ken Griffin ("Griffin") (collectively, "Defendants") hereby remove this action from the County Court At Law Number 2 of Dallas County, Texas to this Court because federal jurisdiction exists under 28 U.S.C. § 1334(b). In support of this Notice of Removal, Defendants respectfully show the following:

### I. INTRODUCTION

Defendants are parties in a civil action brought on April 19, 2005 by Texas Barcode Systems Ltd. ("TBS") in the County Court At Law Number 2 of Dallas County, Texas, entitled *Texas Barcode Systems, Ltd. v. Zebra Technologies International, LLC & Ken Griffin*, Cause No. CC05-4531-B (the "State Lawsuit"). An index of all state court papers is attached hereto as Exhibit A. The state court docket sheet is attached hereto as Exhibit B. Each document filed in state court action, individually tabbed and arranged in chronological order by state court file date

is attached hereto as Exhibit C. A Certificate of Interested Persons pursuant to Local Rule 81.1(a)(3)(D) and 3.1(f) is attached hereto as Exhibit D.

TBS' First Amended Petition in the State Lawsuit asserts causes of action which the Defendants now remove by this Notice of Removal. They are removed pursuant to 28 U.S.C. § 1452(a), which allows a party to remove any claim or cause of action in a civil action to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under 28 U.S.C. § 1334.

This Notice of Removal is filed within thirty (30) days of receipt of the First Amended Petition and is timely filed under Federal Rule of Bankruptcy Procedure 9027(a)(3). This Notice of Removal is filed subject to and without any waiver of any defenses or objections to the First Amended Petition allowed under the Federal Rules of Civil Procedure or other applicable law. A copy of this Notice of Removal is being filed with the clerk of the court of the County Court at Law, Dallas, Texas, and is being served on TBS's counsel. This is a core proceeding. None of the exceptions to 28 U.S.C. § 1452(a) apply in this instance.

## II. VENUE OF REMOVED ACTION

This Court is the United States District Court for the district embracing the place where the state court action is pending. Therefore, it is the appropriate court for removal pursuant to 28 U.S.C. §§ 1441(a) and 1446.

## III. BASIS FOR REMOVAL

This Court has jurisdiction of the claims and causes of action alleged by TBS against the Defendants in this action because they are claims and causes of action "arising under title 11, or arising in or related to cases under title 11," within the meaning of 28 U.S.C. § 1334(b). Such claims and causes of action are removable under 28 U.S.C. § 1452(a), which states: "A party may remove any claim or cause of action in a civil action . . . to the district court for the district

where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under 1334 of this title."

Specifically, the claims and causes of action sought to be removed arise under title 11 and are related to a bankruptcy case in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, entitled *In re Texas Barcode Systems Ltd.*, Case No. 05-40123 (the "Bankruptcy Case"). On January 5, 2005, Zebra, along with five other creditors, filed an involuntary bankruptcy petition against TBS under 11 U.S.C. § 303(a). TBS has hotly contested the petition, and a trial is currently in progress under 11 U.S.C. § 303(h). At issue is whether an order for relief should be entered against TBS and whether the petitioning creditors filed the involuntary petition in "bad faith" pursuant to 11 U.S.C. § 303(i)(2). A copy of the Pretrial Order entered by the bankruptcy court with respect to the trial is attached hereto as Exhibit E.

In its State Lawsuit, TBS asks a Texas state court to enter judgment on its behalf based upon the allegation (among others) that Defendants "attempt[ed] to force TBS into bankruptcy." First Amended Petition, page 9. Specifically, TBS alleges that Defendants:

> solicited numerous creditors to join it in filing a malicious petition to force TBS into involuntary chapter 7 bankruptcy. The sworn testimony of one of the few creditors that has yet to withdraw their petition shows clearly that Zebra heavily recruited other creditors. . . . Zebra's desire to "finish off" TBS is so strong that it is paying the legal fees of other creditors.
>
> Zebra's attempt to slaughter TBS through its malicious bankruptcy proceeding smells even more foul when coupled with the fact that it came on the heels of TBS suing its co-conspirator – One Network Enterprises. In less than two weeks after that suit was filed, Zebra had rounded up creditors and filed its bankruptcy petition in the hopes TBS would back off its suit against Zebra's new best friend and co-conspirator.
>
> It is interesting to note that Zebra has been offered a settlement in the bankruptcy proceeding that would likely equal or exceed any recovery that might be achieved by forcing TBS to liquidate its assets.

First Amended Petition ¶¶ 27-29 (emphasis in original omitted). Pursuant to sections 303(i) and (h) of the Bankruptcy Code, a bankruptcy court may enter judgment against petitioning creditors for filing a bankruptcy petition in bad faith and may further assess damages, including punitive damages, to sanction such behavior. 11 U.S.C. § 303(i) and (h). Section 303 provides the *only* cause of action for the filing of a "malicious bankruptcy petition." "[W]hen a cause of action is one which is created by title 11, then that civil proceeding is one 'arising under title 11." 1 COLLIER ON BANKRUPTCY ¶ 3.01[4][c][i] (Lawrence P. King, et al. eds., 15th Ed. 2005). Because TBS's claims seek an inquiry into the propriety of the filing of an involuntary bankruptcy petition, its cause of action for such claims arises under 11 U.S.C. § 303 (i) and (h), and the district court has original jurisdiction over those claims. 11 U.S.C. § 1334(b).

Additionally, this case is "related to" the bankruptcy. 11 U.S.C. § 1334(b). According to the Fifth Circuit, the applicable test for determining whether a proceeding is related to a bankruptcy is "whether the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Wood v. Wood* (*In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987) (*quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original). As the court for the Western District of Texas has recognized, "[t]he key word in this test is 'conceivable'; certainty, or even likelihood is not a requirement." *Biglari Import & Export, Inc. v. Nationwide Mut. Fire Ins. Co.*, Civ. No. SA-92-CA-238, 1992 WL 219012, at *1 (W.D. Tex. April 23, 1992) (Garcia, J.) (*citing In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 264 (3d Cir. 1991)).

Applied here, the State Lawsuit plainly could have a conceivable effect on TBS's bankruptcy estate. While Defendants dispute the validity of the TBS's claims, TBS seeks to recover hundreds of thousands of dollars from Defendants. If TBS were to prevail on its claims, in whole or in part, and if the bankruptcy court were to enter an order for relief against TBS, then

TBS's bankruptcy estate would be materially affected: it would be enlarged and there would be additional assets to distribute to the creditors of the estate. As a matter of law, a potential increase in the assets available to the estate confers "related to" bankruptcy jurisdiction under section 1334(b). *See, e.g.*, *Wood*, 825 F.2d at 93. A case where there exists "related to" jurisdiction under section 1334(b) is removable under 28 U.S.C. § 1452(a).

WHEREFORE, Defendants respectfully request that the Court take notice of this removal, place this case upon the appropriate docket, and grant them such other and further relief to which they are justly entitled.

Dated: May 19, 2005.

Respectfully submitted,

Christopher J. Scanlan
TX Bar No. 24002900
Jennifer Salisbury
TX Bar No. 24007976
**CARRINGTON, COLEMAN SLOMAN & BLUMENTHAL, L.L.P.**
200 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: 214-855-3000
Facsimile: 214-855-1333

*Attorneys for Zebra Technologies International, LLC and Ken Griffin*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the Notice of Removal has been delivered by certified mail return receipt requested, to the following attorneys of record, on this 19th day of May, 2005.

Blake L. Beckham
Daylen K. Gallman
THE BECKHAM GROUP P.C.
3400 Carlisle, Suite 550
Dallas, Texas 75204

Rod L. Poirot
Cavazos, Hendricks & Poirot, P.C.
Suite 570, Founders Square
900 Jackson Street
Dallas, Texas 75202-4425

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **Texas Barcode Systems, Ltd.** | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **Cause No. ______________** |
| | § | |
| **Zebra Technologies International, LLC** | § | |
| **& Ken Griffin** | § | |
| | § | |
| ***Defendants*** | § | |

**INDEX OF STATE COURT PAPERS**

| Tab No. | Date Filed | Document Name |
|---|---|---|
| 1. | 04/12/05 | Texas Barcode Systems, Ltd.'s Original Petition |
| 2. | 04/13/05 | Letter from Court to Counsel advising that Case No. 0504531-B is set for dismissal |
| 3. | 04/19/05 | Texas Barcode Systems, Ltd.'s First Amended Petition |
| 4. | 04/25/05 | Citation on Plaintiff's First Amended Petition to Zebra Technologies International, LLC |
| 5. | 04/25/05 | Citation on Plaintiff's First Amended Petition to Ken Griffin |
| 6. | 05/13/05 | Defendants' Verified Plea in Abatement and Original Answer |
| 7. | 05/16/05 | Letter from Court to All Counsel of Record advising of trial setting |
| 8. | 05/16/05 | Letter from Court to Counsel of Record advising that Mediator has been appointed |
| 9. | 05/17/05 | Mediation Order |

1

**JUDGE'S DOCKET,** COUNTY COURT AT LAW NO 2

Action: DEBT AGRMT Filing: 04-12-05 No. 05-04531-B

| PARTIES | ATTORNEYS |
|---|---|
| TEXAS BARCODE SYSTEMS LTD | GALLMAN DAYLAN K<br>THE BECKHAM GROUP P C<br>3400 CARLISLE, SUITE 550<br>DALLAS TX 75204<br>214 965 9300 24040944 |
| VS.<br>ZEBRA TECHNOLOGIES INTERN<br>KEN GRIFFIN<br>Christopher J. Scanlan #24002900 | 4-19-05 Texas Barcode Systmes first amended petition<br>5-13-05 deft's verified plea in abatement and original answer |

JURY FEE PAID

05-04531-B

**SETTINGS**

| | |
|---|---|
| | SEP - 9 2005 |
| 6/16/05 | Trial set 11/21/05 (Jennifer Cathan) |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**FW: Price Concession Form**

Trousil, Gene [gtrousil@onenetwork.com]

To: LaRue, Forrest; Pietzsch@aol.com; sdebow@bellsouth.net; john@boschkiser.com

Cc: McDearmon, Ron; Patterson, Ralph

Attachments: 2004 PC Form.doc (44 KB)

Just FYI for all of you.

Thanks,
Gene

-----Original Message-----
**From:** Thomas, John
**Sent:** Thursday, November 11, 2004 5:42 PM
**To:** Trousil, Gene
**Subject:** FW: Price Concession Form

Gene,
I spoke with Ken Griffin and we need to have each sales person fill out this form with just the customer infor, partnumber, and discount/price for anything that has exception pricing. I don't have everones email. Do you have or possible Jason have a list to attach this to and send?

> -----Original Message-----
> **From:** Griffin, Kenneth [mailto:KGriffin@zebra.com]
> **Sent:** Thu 11/11/2004 1:57 PM
> **To:** Thomas, John
> **Cc:**
> **Subject:** Price Concession Form
>
> John
>
> Here is the form I have to complete to request a Price Concession. Please reply so I know I have your address correct.
>
> Thanks
>
> Ken
> <<2004 PC Form.doc>>
>
> *Ken Griffin*

Screen 1 of 2

**ZEBRA PRICE CONCESSION FORM**

| | |
|---|---|
| Originator Ken Griffin | Competitor[1]: N/A |
| Regional Manager Ron Spencer | Competitive Printer Manufacturer and Model #: [redacted] |
| Reseller [redacted] | End User (if known) [redacted] |
| Customer Number (if known). [redacted] | Competitive price to (a) Reseller, or (b) End-User [redacted] |

| Printer Configuration | Total Quantity for Application | Min Order Quantity | Effective and Ending Date of Concession | Standard Price & Discount | Special Price & Discount |
|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] - [redacted] | [redacted] - | [redacted] - |
| [redacted] | [redacted] | [redacted] | [redacted] - [redacted] | [redacted] - | [redacted] - |
| [redacted] | [redacted] | [redacted] | [redacted] - [redacted] | [redacted] - | [redacted] - |
| [redacted] | [redacted] | [redacted] | [redacted] - [redacted] | [redacted] - | [redacted] - |

**If this is intended to meet competition:**

**1. COMPETITIVE INFORMATION (DO NOT COMMUNICATE WITH COMPETITORS):**

*Competitive Analysis Summary:* [redacted]
(e g Describe the application and the quantity and quality of product offered by the competitor. Describe the nature of the value-add services, if any, offered by the competitor What is the duration of the competitive offer? )

*Provide detail respecting the source of this information:* [redacted]
(e g name and title of source, date and place of discussions, etc.)

*Attach any supporting documentation* (e.g copy of competitive quote) *Indicate the source of such information* [redacted]

*Has Reseller or End-user been visited by a Zebra Account Executive?* [redacted]

**2. RESALE INFORMATION:**

[1] This may be a competitor of the Reseller (another VAR) or a competitor of Zebra (if the competitive manufacturer is selling direct).

Screen 2 of 2

*If enough information has been provided to justify a meet competition price concession, should this PC be reserved for this Reseller with respect to this transaction?* [redacted]

*If yes, describe the unique value add services that this Reseller will provide with respect to this transaction:* [redacted]
(e g. Describe investments made by Reseller to this end-user or end-user market and any services being provided by the Reseller to this end-user or with respect to this transaction in particular )

**If this is not intended to meet competition but rather simply a deviation from the Reseller's current discounts in Baan (e.g. limited variation from PartnersFirst discount structure, demo pricing, price protection for length of bid, trade-in promotions, etc.):**

Describe the rationale for the price concession: [redacted]

**Other issues:** [redacted]

By signing below, the undersigned represent that to their knowledge the information in this form is true, complete and correct in all material respects and that Zebra Technologies International, LLC and its employees may rely on this information to meet competitive market conditions.

Originator: Ken Griffin Date: [redacted] If hard copy, please sign: ____________________

Authorizing Manager: [redacted] Date: [redacted] If hard copy, please sign ____________________

ORIGINAL

CAUSE NO. CC-05-4531-B

| | | |
|---|---|---|
| **TEXAS BARCODE SYSTEMS, LTD.,** | § | **IN THE COUNTY COURT** |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **ZEBRA TECHNOLOGIES INTERNATIONAL, LLC & KEN GRIFFIN,** | § | |
| | § | |
| ***Defendants.*** | § | **COUNTY COURT AT LAW NO.** 2 |

**TEXAS BARCODE SYSTEMS, LTD's ORIGINAL PETITION**

Plaintiff **Texas Barcode Systems, Ltd.** ("TBS") brings this lawsuit against **Zebra Technologies International, LLC ("Zebra")** and **Ken Griffin ("Griffin")** and respectfully shows:

**I. PARTIES**

1. Plaintiff TBS is a Texas limited partnership with its place of business at 6504 International Parkway, Suite 1500, Plano, Texas 75093.

2. Defendant Zebra Technologies International, LLC at 333 Corporate Woods Pkwy, Vernon Hills, IL 60061-3109 is a Limited Liability Corporation registered to do business in that State of Texas and may be served through its registered agent C T CORPORATION SYSTEM, 350 NORTH ST. PAUL ST., DALLAS, TX 75201.

3. Defendant Ken Griffin is an individual and may be served at his residence at 1509 Carriage Lane, Garland, Texas 75043.

**II. DISCOVERY CONTROL PLAN**

4. Plaintiff intends to conduct discovery under Level 2 of the TEXAS RULES OF CIVIL PROCEDURE.

## III. VENUE AND JURISDICTION

5. This Court has jurisdiction over this matter as the amount of the dispute is within the jurisdictional limits of this Court. Pursuant to section 15.002(a)(1) of the TEXAS CIVIL PRACTICES AND REMEDIES CODE, venue is proper in Dallas County, Texas, because all, or a substantial part of, the events or omissions giving rise to the claims occurred in Dallas County, Texas. Further, removal to Federal court would be inappropriate because complete diversity of jurisdiction does not exist.

## IV. BACKGROUND FACTS

**TBS's Business**

6. TBS was established in 1996, and is the premier systems integrator in the nation providing Auto ID (bar coding) using wired and wireless networks, performance bar code printers, mobile computing, scanning and custom designed software specially designed for each customer.

7. TBS also provides automated inventory applications, warehouse management systems, fixed asset tracking, and bar code label design and technology. TBS provides "value added" services with the products it sells and manufactures by providing installation and maintenance for every piece of hardware in its portfolio. It also provides training, installation, and support for all its software programs. These "value added" services catapult them beyond most other competitors in their field.

8. In fact, these value added services, coupled with the quality of the products TBS sells and manufactures and the software solutions they develop for customers, created a business that in the few short years of its existence has achieved sales that have exceeded 20 million a year.

9. TBS boasts customers like, Tandy (now Radio Shack), Delphi (a Division of General Motors), and Blockbuster Video. As an example, TBS provided an upgrade on hand held data collection devices for Delphi. Delphi uses hand held data devices in the plants where they manufacture wiring harnesses for automobiles. Delphi was looking for a better way to move, track, and ship the wiring harnesses. TBS provided a solution for Delphi that allowed more data storage on the hand held devices, eliminated errors, such as "order picking errors" (orders from one customer sent to another customer because the scanning device picked up the wrong ID), and TBS was able to deliver its product to Delphi in a little over two months. Delphi was extremely pleased.

10. This type of service and customer satisfaction along with booming sales evidence the highly unique combination of quality products and installation, training, maintenance, and support services that TBS has developed. This combination of compatible products and great services, as well as, the custom creation of software for these products has taken several years and hundreds of thousands of dollars to develop. TBS has created, through its own hard work and development, a system to meet and exceed the needs of its customers. TBS has been recognized for their innovation in the industry by The Dallas Business Journal, The SMU Cox School of Business, and Business Systems Magazine.

11. TBS has been able to provide these products, software, and services competitively by careful pricing, market analysis, and gathering and analyzing data about their customers. This information is highly unique and confidential. Such information is not readily and easily available to other competitors. If competitors were to have access to this information, it would have devastating effects on TBS.

12. As described above, TBS has been a highly successful business providing customized and unique services to its customers. However, TBS has recently suffered a tremendous loss that almost no business could survive. In July, 2002, $2.4 million worth of inventory was stolen from a TBS warehouse. In order to keep the business from ultimately going under, the management decided to seek potential buyers for the business, however, negotiations failed and TBS hired a turn around consultant who suggested that TBS reduce its staff and continue operating. TBS terminated several of its sales staff as part of the turn around process.

13. Once terminated, these sales staff went to work for One Network Enterprises, Inc., now a competitor of TBS, and conspired with Zebra and Griffin to divert TBS business through egregious breaches of fiduciary duties and libelous and slanderous comments. Many orders of TBS were cancelled after the customers received false information from the terminated sales staff that TBS was out of business, had closed their sales operations, and couldn't fill the orders.

14. Zebra was a long time supplier to TBS of many of the printers and bar coding hardware that TBS sold to its customers. TBS and Zebra had a business relationship that spanned over eight years and TBS was considered one of Zebra's best customers. Zebra made substantial profits from its relationship with TBS.

15. TBS and Zebra entered into a Confidentiality Agreement concerning TBS' confidential information provided to Zebra in the course of business. **Exhibit 1**. Zebra had access to certain information about TBS customers and TBS' pricing and sales to these customers. Such information was highly valuable to TBS and would be valuable TBS' competitors.

16. Griffin was TBS' long time contact at Zebra and had access to the same confidential information and received confidential information from TBS on a regular basis. Griffin was aware of numerous customers serviced by TBS and the pricing received by these customers from TBS. Griffin also was responsible for sending sales leads to TBS when he was contacted by companies seeking services that TBS could provide.

**Trade Secrets and Confidential Information of TBS**

17. TBS spent hundreds of thousands of dollars in engineering and software development to design the upgrades and integration systems for the products they sell. Its employees have spent hundreds of hours in the development and design of the upgrades and software, and in designing and implementing training, installation, and maintenance programs. These upgrades, software applications, as well as, the installation, training, and support for the upgrades are unique. These upgrades, software applications, and combination of training, installation, and support are not easily discoverable or readily obtainable without using improper means. They also give TBS a competitive advantage in its business because other competitors do not offer this unique set of value added products and services.

18. In addition, the desires of TBS customers are specialized and much information regarding these customers is the product of developing relationships with them over the last 8 years and providing products and services that meet their specialized needs. Other competitors would not know this information about TBS's customers and could not readily obtain this information without developing the same long and successful relationships with the customers. Sales histories, confidential pricing, terms of pricing, customer lists, and certain customer contact information are many of the items included in TBS' confidential customer information that Zebra and Griffin have access to.

**<u>TBS has taken reasonable steps to protect its Confidential & Trade Secret Information</u>**

19. TBS has taken a number of steps to protect its confidential and trade secret information.

[a] First, TBS has required its employees to acknowledge that they may not disclose or use confidential or trade secret information after they no longer work for TBS.

[b] Second, confidential and trade secret information on computers is password protected.

[c] Third, confidential information is stored in locked cabinets or password protected computer systems at TBS's offices.

[d] Fourth, TBS maintains protections on its computer systems that prevent hacking into the server of the business.

[e] Fifth, TBS allows access to its source codes and customized software data only to employees who need to have access to such information. For example, a salesperson would not have access to this information, where as, a technical software engineer would. Similarly, a technical software engineer would not have access to the customer list of the salespersons.

[f] Sixth, TBS has repeatedly informed its employees that customer lists, vendor lists, source codes, pricing information, customer information, custom software, and many other items are confidential and trade secret property of TBS and must not be disclosed.

[g] Seventh, TBS locks its building at night and only a limited number of employees have access to the building and its contents after hours.

[h] Eighth, TBS enters into a non-disclosure and confidentiality agreements with those that it discloses its information to and marks information as "confidential" and copyrighted.

[i] TBS entered into confidentiality agreements with Zebra to protect the confidential information it passed on to Zebra.

20. Accordingly, TBS has taken numerous steps to insure that it's confidential and trade secret information is protected.

**Bad acts of Zebra and Griffin**

21. Immediately upon TBS' termination of some of its sales staff, Zebra and Griffin began a course of action to assist these former TBS sales people to divert sales and business away from TBS and to their new employer – One Network Enterprises, Inc. ("One") – now a competitor of TBS. Interestingly, One never had a vendor relationship with Zebra or Griffin until early November 2004 – when it hired the former TBS sales people. However, Zebra and Griffin allowed One to represent to TBS customers that One had the same strategic relationship with Zebra as TBS had always had. Zebra and Griffin also used TBS information to fill out the vendor certification paper work to help One become a reseller of Zebra products. For example, One had never sold the products that TBS sold, yet Zebra ***used TBS sales figures*** to fill out the vendor certification paperwork.

22. Zebra and Griffin also assisted One in "flipping" orders to One that were originally placed with TBS months before One even came onto the scene. **Exhibit 6.** Griffin received confidential information belonging to TBS that the former TBS sale people had stolen and used that information to benefit One – not TBS. Griffin received emails from former TBS sales people, now at One, requesting that they get TBS pricing. Griffin and Zebra, to the severe detriment of TBS, complied with these requests. Many times these emails had TBS quotes or other TBS confidential information attached to them for review by Zebra and Griffin. **Exhibit 5.** It is likely that Zebra and Griffin distributed this confidential information to other third parties to the detriment of TBS.

23. Griffin also forwarded forms to One so that the former TBS sales people could, using confidential information of TBS, fill out the forms and get the same exception pricing, customers, and discount pricing as TBS. **Exhibit 2.** Griffin forwarded this form

with the knowledge that TBS had specifically demanded that One not use such information.

24. Amazingly, Griffin and Zebra continued to divert business away from TBS even after they were put on notice in early November 2004 that TBS was considering legal remedies to prevent its former sales people from using its confidential and trade secret information. Griffin received a copy of a cease and desist letter written and forwarded by TBS' counsel on November 5, 2004. **Exhibit 3**. Griffin and Zebra simply ignored this warning.

25. Griffin also requested that the former TBS' sales people forward him documents from other vendors that contained libelous statements about TBS. **Exhibit 4**. These libelous statements indicated that TBS was financially unsound, was out of business, and that One had simply taken over TBS' business. These statements were all false and Zebra and Griffin knew they were false. Griffin republished this libelous document to management inside Zebra and possibly published it to others outside Zebra.

26. Also, by helping the former TBS sales people flip orders for the benefit of One, Griffin and Zebra tortiously interfered with numerous existing and prospective contracts of TBS. Zebra, without any independent investigation, cut TBS off from sales leads normally sent to it and redirected those leads to One based on false information that TBS had sold its customer list and was financially unable to service customers. Zebra did so with full knowledge that such information was false.

27. In connection with another matter, Griffin has admitted in sworn testimony that sharing information of his customers with other customers is wrong, unethical, against Zebra policy, and is immoral. Griffin further admitted that it would be absolutely wrong for him to do business with a sales person who had wrongfully obtained and was using

confidential information of the sales person's previous employer. Yet, in the same deposition, Griffin admitted to helping One get set up as a competitor of TBS and against TBS by cooperating with former TBS sales people who were using TBS confidential information to flip orders and obtain vendor certifications. Griffin knew these individuals were using the confidential infomration of TBS.

28. Importantly, ***Zebra had a contractual duty*** not to disclose confidential information of TBS. The Value Add Program Agreement between TBS and Zebra contained a Confidentiality Agreement that prohibited Zebra from disclosing TBS' confidential information. Zebra breached this agreement when it disclosed TBS confidential information to One through certain vendor certification applications and other documents.

29. In sum, Zebra and Griffin have knowingly interfered with the business relations of TBS by assisting former TBS sales people in flipping orders, obtaining vendor certifications using TBS confidential information, and breaching the Confidentiality Agreement between TBS and Zebra. In so doing, Zebra and Griffin have induced the former TBS sale people to breach the fiduciary duties they owe to TBS for the purpose of "meeting Zebra goals" and "generating revenue for Zebra." The deposition of Griffin confirms this. Finally, Zebra and Griffin have participated in and encouraged the libeling of TBS.

30. All of these acts were done with knowledge that TBS was still in business and making and filling orders with Zebra; and with the knowledge that TBS had threatened legal action if its former sales people continued to use and disclose it's confidential and trade secret information.

## V. CAUSES OF ACTION

***Tortious Interference with Existing and Prospective Contractual Relations***

31. TBS had contracts in place in the form of invoices and orders from several customers. Zebra and Griffin interfered with these contracts by participating with former TBS sales people to divert these orders to One. Zebra and Griffin willfully and intentionally assisted these sales people by redirecting sales from TBS to One with the knowledge that One was a competitor of TBS, that TBS had threatened legal action if One did not cease using its confidential information to divert these sales, and that such actions were unethical and against Zebra policy. As a proximate result of Zebra and Griffin's actions, TBS suffered actual damages in the form of lost sales, revenues, and profits.

32. Zebra and Griffin knew, based on years of experience with TBS, that there was a reasonable probability that TBS would enter into business relationships with its former customers and customers sent to it by the sales leads normally forwarded by Zebra. Zebra cut TBS off from all sales leads with the intention of giving such leads to One. Zebra assisted One in acquiring former TBS customers and potential new customers of TBS by knowingly participating with One in its wrongful use of TBS confidential and trade secret information. Zebra and Griffin also breached their duty to TBS to not disclose or use its confidential information by allowing One access to TBS pricing, terms, sales history, and customer contacts. Zebra and Griffin's acts were the proximate cause of damages to TBS in the form of lost sales, revenues, profits, and customer goodwill.

***Breach of Contract***

33. A valid Confidentiality Agreement existed between Zebra and TBS that prohibited Zebra from disclosing TBS confidential information to anyone outside Zebra's organization. Zebra breached this agreement by disclosing pricing terms, concessions,

and customer information of TBS to its competitor One and possibly others. TBS has been damaged by Zebra's breach in the form of lost sales, revenues, and profits. TBS has performed all conditions precedent or Zebra has otherwise waived them.

***Inducement to Breach Fiduciary Duty***

34. Griffin has testified that he participated with the former sales people from TBS in filling orders that were originally placed by TBS but ultimately fulfilled by One. Griffin testified he did this in order to meet goals of Zebra and to protect its revenues and to help One establish itself as a competitor of TBS. Griffin also forwarded forms to be used by Zebra that would require One to use confidential information of TBS in order to complete. These forms were then to be returned to Zebra so that One could enjoy the same customers and pricing as TBS. All of these actions were intended to induce former TBS employees to breach their fiduciary duties to TBS and disclose and use its confidential and trade secret information. As a proximate result, TBS has been damaged in the form of lost sales, revenues, profits, and customer goodwill.

## VI. <u>ATTORNEY FEES</u>

35. Because of Griffin and Zebra's actions, TBS has been required to hire the undersigned attorneys to bring this action. Pursuant to the Texas Civil Practices and Remedies Code section 38.001, and the 2004 Value Add Program Agreement, from which the Confidentiality Agreement is taken, TBS pleads for and is entitled to its reasonable attorney fees in an amount not less than $200,000.

## VII. <u>DEMAND FOR JURY</u>

36. Plaintiff demands a jury trial and tenders the appropriate fee.

## VIII. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully requests that Griffin and Zebra be cited to appear and answer herein, as required by law, and that TBS have the following relief:

(a) All damages in the amount determined to have been sustained by Plaintiff including, unjust enrichment, out-of-pocket, consequential, and market damages and lost profits;

(b) Attorneys fees reasonably incurred and not less than $200,000;

(c) Pre- and Post-Judgment Interest;

(d) Costs of this lawsuit, including experts' fees, and other disbursements; and

(e) Such other and further relief, at law or in equity, to which Plaintiff show themselves to be justly entitled.

**DATED:** April 12, 2005

Respectfully submitted,

Blake L. Beckham
State Bar No. 02016500
Daylen K. Gallman
State Bar No. 24040944
THE BECKHAM GROUP P.C.
3400 Carlisle, Suite 550
Dallas, Texas 75204
214-965-9300 (tel.)
214- 965-9301 (fax)

***ATTORNEYS FOR PLAINTIFF***

# ZEBRA TECHNOLOGIES INTERNATIONAL, LLC

## 2004 VALUE ADD PROGRAM: RFID

## Program Addendum

## Point of Sale (POS) Confidentiality

The Program Policies section of the Program Brochure is amended as follows:

To the extent Program Participant provides Zebra-compliant POS reports to Zebra, the following provisions shall also apply:

"Program Participant Confidential Information" means Zebra-compliant POS reports provided by Program Participant to Zebra whether or not marked by Program Participant as "Confidential". Program Participant acknowledges that notwithstanding anything else contained in this Agreement to the contrary and even if marked as "Confidential" or "Proprietary", Purchase Orders, any other documentation and the information contained therein and any other information provided by Program Participant to Zebra are not Program Participant Confidential Information. Moreover, it is understood that the obligations imposed upon Zebra by this paragraph shall not apply to information that at the time of disclosure or thereafter (i) was generally available to and known by the public, other than as a result of a unauthorized disclosure by Zebra or its representatives or (ii) was generally available to Zebra on a non-confidential basis from a source other than Program Participant or its representatives, or; (iii) the information was already known to Zebra or independently developed by or on behalf of Zebra. For a period of three (3) years from the date Program Participant Confidential Information is provided, Zebra shall maintain the Program Participant Confidential Information in confidence and shall use the information only for compensation and market research purposes. Notwithstanding the foregoing, the Program Participant Confidential Information shall not be deemed confidential if it (i) was or becomes generally available to and known by the public, other than as a result of an unauthorized disclosure by Zebra or its representatives or (ii) was or becomes generally available to Zebra on a non-confidential basis from a source other than Program Participant or its representatives, or (iii) was or is independently developed by or on behalf of Zebra. To the extent any customer of Program Participant contacts Zebra for after market service or with respect to the purchase of replacement parts, ribbons or media, nothing herein shall restrict Zebra in any manner with respect to such customer. Zebra may make available the Program Participant Confidential Information to the employees, agents and advisors of Zebra and its affiliates so long as all persons to whom such Program Participant Confidential Information is made available will be made aware of the confidential nature of such Program Participant Confidential Information and agree to be bound by the restrictions imposed hereunder on the use thereof. In any such event, Zebra shall remain liable for any breach of confidentiality by such employees, agents or advisors of Zebra and its affiliates. In addition to the foregoing, Zebra and its representatives may disclose the Program Participant Confidential Information if required by law.

ZEBRA TECHNOLOGIES
INTERNATIONAL, L.L.C.

By: [signature]
David Crist, President

Date: 4/24/04

PROGRAM PARTICIPANT

Texas Barcode System

By: [signature]
Name: David Edwards
Title: President

Date: 4/5/04

Zebra

**ZEBRA TECHNOLOGIES INTERNATIONAL, LLC**
**2004 VALUE ADD PROGRAM**
**Program Addendum**
**Point of Sale (POS) Confidentiality**

The Program Policies section of the Program Brochure is amended as follows:

To the extent Program Participant provides Zebra-compliant POS reports to Zebra, the following provisions shall also apply:

"Program Participant Confidential Information" means Zebra-compliant POS reports provided by Program Participant to Zebra whether or not marked by Program Participant as "Confidential". Program Participant acknowledges that notwithstanding anything else contained in this Agreement to the contrary and even if marked as "Confidential" or "Proprietary", Purchase Orders, any other documentation and the information contained therein and any other information provided by Program Participant to Zebra are not Program Participant Confidential Information. Moreover, it is understood that the obligations imposed upon Zebra by this paragraph shall not apply to information that at the time of disclosure or thereafter (i) was generally available to and known by the public, other than as a result of a unauthorized disclosure by Zebra or its representatives or (ii) was generally available to Zebra on a non-confidential basis from a source other than Program Participant or its representatives, or; (iii) the information was already known to Zebra or independently developed by or on behalf of Zebra. For a period of three (3) years from the date Program Participant Confidential Information is provided, Zebra shall maintain the Program Participant Confidential Information in confidence and shall use the information only for compensation and market research purposes. To the extent any customer of Program Participant contacts Zebra for after market service or with respect to the purchase of replacement parts, ribbons or media, nothing herein shall restrict Zebra in any manner with respect to such customer. Zebra may make available the Program Participant Confidential Information to the employees, agents and advisors of Zebra and its affiliates so long as all persons to whom such Program Participant Confidential Information is made available will be made aware of the confidential nature of such Program Participant Confidential Information and agree to be bound by the restrictions imposed hereunder on the use thereof. In any such event, Zebra shall remain liable for any breach of confidentiality by such employees, agents or advisors of Zebra and its affiliates. In addition to the foregoing, Zebra and its representatives may disclose the Program Participant Confidential Information if required by law.

ZEBRA TECHNOLOGIES
INTERNATIONAL, L.L.C.

By: [signature]
David Crist, President

Date: 7/16/04

PROGRAM PARTICIPANT

Texas Barcode Systems

By: [signature]
Name: David W. Edwards
Title: President

Date: 7/14/04

**FW: Cease and Desist letter**

Forrest LaRue [flarue@earthlink.net]

**To:** 'John Thomas (res0893A@verizon.net)'; 'JJ.Durbak@intermec.com'; Ken Griffin

**Attachments:** C&D.pdf (8 KB)

---

FYI

Forrest LaRue
Mobile Field Engineer, Inc
16584 Roserock Circle
Choctaw, OK 73020
405-390-0733 office
405-390-0735 fax
405-826-7226 cell phone
flarue@earthlink.net

-----Original Message-----
From: Willie.Schuerger@tklaw.com [mailto:Willie.Schuerger@tklaw.com]
Sent: Friday, November 05, 2004 5:09 PM
To: flarue@earthlink.net
Cc: David Edwards; William.Katz@tklaw.com; David.Harris@tklaw.com
Subject: Cease and Desist letter

Dear Mr. LaRue,

As counsel for Texas Barcode Systems, Ltd. I attach a cease and desist letter addressed to you.

(See attached file: C&D.pdf)

---

William J. Schuerger <willie.schuerger@tklaw.com>
Thompson & Knight LLP, 1700 Pacific, Ste. 3300, Dallas TX 75201
214.969.1369 (voice), 214.880.3146 (fax)

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS CONFIDENTIAL ATTORNEY WORK PRODUCT AND MAY BE SUBJECT TO THE ATTORNEY - CLIENT PRIVILEGE. IT IS INTENDED SOLELY FOR THE RECIPIENTS IDENTIFIED ABOVE, AND ANY ACCESS, USE, COPYING OR DISTRIBUTION BY ANYONE ELSE IS UNAUTHORIZED AND STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE SO NOTIFY THE SENDER IMMEDIATELY BY REPLY EMAIL AND THEN DELETE THIS TRANSMISSION.

**RE: Intermec Letter**

Forrest LaRue [flarue@earthlink.net]

**To:** 'Griffin, Kenneth'

**Attachments:** MFE_Honors Partner 2.doc (165 KB)

---

*How did the conference call go today?*

***Forrest LaRue***
**Mobile Field Engineer, Inc**
16584 Roserock Circle
Choctaw, OK 73020
405-390-0733 office
405-390-0735 fax
405-826-7226 cell phone
flarue@earthlink.net

---

**From:** Griffin, Kenneth [mailto:KGriffin@zebra.com]
**Sent:** Friday, November 05, 2004 9:01 AM
**To:** Forrest La Rue (E-mail)
**Subject:** Intermec Letter

Forrest

Can you forward me the Intermec letter you have yesterday?

Thanks

Ken

---

*Ken Griffin*
*Senior Account Executive*
*1509 Carriage Lane*
*Garland, TX 75043*
*Office: 972.926.6267*
*Cell: 972.351.3835*
*Fax: 972.926.4258*

---

Screen 1 of 2

Intermec HONORS PARTNER 'ERMEC HONORS PARTNER

Channel Business Manager: JJ Durbak
Application Date: 10-29-2004

**COMPANY INFORMATION**

Company Name: Mobile Field Engineer, Inc

Company Name dba/aka: Mobile Field Engineer, Inc

Street Address: 4055 Valley View Lane

City: Dallas State: TX Zip Code: 75244

Country: USA

Main Phone: (972) 385-8630 Fax Number: (972) 385-1666 Company Web Site: www.fielddispatch.com

Year Business was Established: 4 TAX ID Number: 01-0558509

Primary Contact: Gene Trousil Title: Executive Vice President

Telephone: (972) 385-8630 E-mail: gtrousil@onenetowrk.com

President/CEO: Greg Brady Title: CEO

Telephone: (972) 385-8630 E-mail: gbrady@onenetwork.com

Sales Contact: Gene Trousil Title: Executive Vice President

Telephone: (972) 385-8630 E-mail: gtrousil@onenetwork.com

**MFE – Mobile Field Engineer**
I want to thank you for your support of Texas Barcode Systems (TBS).

Screen 2 of 2

Unfortunately, due to financial issues, TBS can no longer continue as before.

We are pleased, however, to provide you with a much better value proposition through MFE, Mobile Field Engineer. MFE is an existing leader in the Supply Chain Management optimization.

In addition to the Software, Integration, and Stability of MFE, we offer ADC (Automated Data Collection) hardware and services. MFE now employs the senior sales and technical team from TBS. We are established and recognized as an experienced Honors partner with Intermec Technologies. And we will be able to provide you the same pricing that you have received in the past.

In addition, we will typically be able ship standard ADC product the same day the order is entered. (as compared to the previous 2 – 3 week lead time).

I appreciate your patience during this transition, but I sincerely believe this new relationship will of great benefit to you for years to come.

**From:** Stephan Debow [sdebow@bellsouth.net] **Sent:** Mon 11/8/2004 11:06 PM
**To:** 'Griffin, Ken W.'
**Cc:**
**Subject:** Stephan DeBow's printer customer list
**Attachments:** Printer and Monitor Quote from Texas Barcode Systems (1 MB); Revised Printer Quote (40 KB); DeBow Zebra Customers.xls (28 KB)

Ken,

Here are the two deals I need to keep my pricing on. Let me know about accessories too

Thanks!

Stephan DeBow
Regional Sales Manger
Mobile Field Engineer, Inc
550 Seal Place, NE
Atlanta, GA 30308
Cell 678 772 3155
Fax 404 881 9849
www.onenetwork.com

From: Forrest LaRue [flarue@earthlink.net]
To: 'Brown, Mary'
Cc: 'Griffin, Kenneth'; 'Pattermann, James'; 'Hofer, Gene'; 'Weinhammer, Mike'; 'Ward, Russell'
Subject: RE: Project update.

Sent: Mon 12/13/2004 11:02 PM

*Mary,*
*I'm speechless I did my original quote for this project 6 months ago. I did my "final" quote on the label 4 months ago. The samples we sent the end users were of a poor quality due to bad die work. The first samples we sent to Keith James were "hand made" and did not look near the quality of our competition. I don't know why he gave us the job and is probably wondering why himself now. You now tell me they have to pay for additional samples. I'm speechless. Please ship good samples by the 23rd of December to arrive on the 27th at no charge to the "PROSPECTIVE CUSTOMER." He is not yet a customer. We are supposed to be earning his business You do that by providing a quality product in a timely manner. We have yet to do that. The 23rd is 8 working days from Tuesday the 14th. I am emailing Keith tonight to that affect I do not wish to further lose any credibility with this long time customer. I have had many years of very successful business relationships with Leggett & Platt. I do not wish to sacrifice that status.*

*Thank you*

*PS: Please email a confirmation of this action to me on Tuesday.*

**Forrest LaRue**
**One Network/MFE**
16584 Roserock Circle
Choctaw, OK 73020
**405-694-0750 cell**
405-390-0733 office
405-390-0735
flarue@earthlink.net

---

**From:** Brown, Mary [mailto:MBrown@zebra.com]
**Sent:** Monday, December 13, 2004 5:46 PM
**To:** flarue@earthlink.net
**Cc:** Griffin, Kenneth; Pattermann, James; Hofer, Gene; Weinhammer, Mike; Ward, Russell
**Subject:** Project update.

Forrest,
The new raw materials with the kraft paper will take an 8 working day lead-time. We will have a new part number in the morning for the quote.

L & P will need to send us a PO against the quote.
We will eat the plate and die charges, L $ P will be responsible for the material costs.
The sample runs will be available 8 working days from receipt of Purchase order. Purchase orders received by 11:00 am CST will have materials ordered same day, the clock will start ticking

We will provide a demo laser pen.
Forrest, You will not have the quote before 8 am, but it will be available tomorrow
The plates and dies are ready in Greenville for production, we just need to get the new part number so an order can be placed.

THE BECKHAM GROUP
TRIAL LAW

2005 APR 12 PM 3:56
DALLAS COUNTY

**VIA HAND DELIVERY**

April 12, 2005

Dallas County Clerk
509 Main Street
Dallas, Texas 75202

**Re: *Texas Barcode System, Ltd. v. Zebra Technologies, L.L.C. and Ken Griffin***

To The Clerk:

Enclosed please find the original and five copies of Texas Barcode Systems, LTD.'s Original Petition. Also enclosed are our firm checks in the amount of $159.00 and $4.00 for the filing fee and issuance of citations to Zebra Technologies, LLC and Ken Griffin. Please file the original with the Court and return file-stamped copies with the waiting courier. Please contact me at 214.965.5115 when the citations are ready and I will send a courier for them.

Thank you for your assistant in this matter. If you have any questions, please do not hesitate to contact me.

Sincerely,

Judy Smith

Judith E. Smith
Senior Paralegal

JES/no
Enclosures

I:\Texas Barcode\Zebra Suit\correspondence\Clerk 4-12-05.doc

THE BECKHAM GROUP P.C.
3400 Carlisle
Suite 550
Dallas, Texas 75204
Phone: 214 965 9300
Fax: 214 965 9301